Porter J.
delivered the opinion of the court. I| is alleged in the petition, that the defén- » dant entered into a verbal contract with the plaintiff, to purchase from him a slave, which 6011 tract was to be confirmed in writing: that defendant being in great want of the ser-⅜ 0 vices of the negro to work on his house, beg-⅛ ~ ged the use of him, and promised that he ° -*r' should be returned on the next day, or the contract confirmed.
. ⅜ It is further alleged, that the slave has not ° been returned, and judgment is prayed for *191 his value, and for the his loss. jes sustained by 5 *
East'n District.
March, 1822.
The defendant plead the general issue; the cause was submitted to a jury, who found a,
v* • . a i • . • /V» ill verdict against the piaintifl, and he has ap-I ■ pealed.
Farol evidence alone, was introduced to support the allegations contained in the tion.
As our law hasl declared that the sale of slaves must be reduced to writing, that a verbal alienation of them is null, and that in case the existence of any covenant tending to dispose of them is disputed, parol evidence shall not be admitted to prove it; Civil Code, 310, art. 41; Id. 344, art. 2, all the testimony which goes to establish a contract for the purchase of the property mentioned in the petition, must be rejected.
Parol evidence however was legally introduced^ to shew that the plaintiff delivered a slave to the defendant, and the circumstances under which that delivery took place. These circumstances, as we learn from the evidence, were — that the plaintiff and defendant had a conversation respectinglfhe sale of a negro, and that he was delivered to the latter on trial, *192 w^° employed him in a ferry boat, and did not return him. Why he was not returned, the testimony taken on the trial, does not inform us, whether he ran away, or was drowned, or was fraudulently disposed of by the appellee, or lost through his fault or negligence, is left to be ascertained by presumption, for nothing express, nothing positive has been proved in regard to it.
From the evidence, it appears the negro was delivered to defendant, under an agreement which authorises us to infer that it was as much the,interest of the owner to place him in his possession, as it was that of the appellee to receive him. In contracts which are thus reciprocally beneficial to both parties, the same care is exacted of the bailee, which every prudent man takes of his own goods, and the party to whom the property is delivered, is answerable only for ordinary neglect. Domat, liv. 1, tit. 5, sec. 2, art. 4 & 6, Pothier, Traité du pret a usage, n. 97, Dig, liv. 13, tit, 6, l. 5, 18 & 19, par. 5, tit. 2, l. 2. The judge a quo charged the jury conformably to this doctrine, when he told them, if they were satisfied the defendant had used the slave as he did his own, and paid the same attention *193 to his preservation, they ought to find a ver-diet in his favor.
But the judge did not stop here, he Went further, he informed the jury that it was the duty of the plaintiff to prove that the toss of the slave proceeded from the fault of the defendant. In this we think he erred. The owner of the slave Was only obliged to prove he delivered him. The circumstances which were to excuse the failure to restore him, should have been established by the party who received the property on the condition Of returning it. We are far from intending to sáy, that if the slave absconded, or was drdwn-ed, the bailee should have furnished ¡.positive proof of these facts. But it was his duty to give evidence which led to a fair and reasonable inference, that the loss of the property was not owing to any fault of his. It would be imposing a most intolerable hardship on ‘fte bailor, to require of him, not only to prove that he placed his slave in the hands of another, but also to furnish testimony why he could not get him back. We had occasion a few days since to recognize the general rule on this subject, in the case of Delory Vs. Mornet, and we there held that the burthen *194 of proof lies on the person who has to support his case, by proof of a fact, of which he i* supposed the most cognizant. That principle applied here brings us at once to the conclusion, that the onus probandi lay on the defendant ; because he must be presumed to have more knowlege of the slave’s conduct, and what occurred to him while in his possession, than the plaintiff can be supposed to have.
The general rule of evidence is, that the point in issue should be proved by the party who asserts the affirmative. If any doubt could be raised on the application of that rule to this case, it is removed by recurring to the law which governs contracts of this kind.
Poihier in his treatise des Cheptels, n. 53, says, that if a question arises respecting the death of cattle, delivered on the conditions common to this contract, the burthen of proof lies not on the owner, but on the person who received the property.
So in his work Du pret a usage, he teaches the same doctrine; that it is the borrower, not the lender, who must establish by evidence the loss of the thing lent. Pothier, Traité *195 Du pret a usage, n. 40, and in his Treatise ori Obligations, n. 620, he presents the very question before us, and decides it, in conformity with the opinion we have just expressed.
Duncan for the plaintiff Dumoulin for the defendant.
It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and the cause be remanded for a new trials with directions to the district judge not to charge the jury, that “ the plaintiff not having proved it was by the fault of the defendant the negro had disappeared, they ought to find for the defendant.5’ The costs of appeal to be paid by the appellee.